TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ELIA HERRERA (Cal. Bar No. 293278)
ASHLEY FILLMORE (Cal. Bar. No. 332167)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2024/2416
    Facsimile: (213) 894-0141
    E-mail:    elia.herrera@usdoj.gov
          ashley.fillmore@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>           v.<br><br>ARNO ABRAMIAN,<br><br>       Defendant. | No. 20-CR-00227-PA-1<br><br>PLEA AGREEMENT FOR DEFENDANT<br>ARNO ABRAMIAN |

1.   This constitutes the plea agreement between Defendant Arno Abramian ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts Three and

1    Ten of the indictment in <u>United States v. Arno Abramian</u>, CR No. 20-
2    227-PA, which charge defendant with bank fraud, in violation of 18
3    U.S.C. § 1344(2); and aggravated identify theft, in violation of 18
4    U.S.C. § 1028A(a)(1), respectively.

5            b.    Not contest facts agreed to in this agreement.

6            c.    Abide by all agreements regarding sentencing contained
7    in this agreement.

8            d.    Appear for all court appearances, surrender as ordered
9    for service of sentence, obey all conditions of any bond, and obey
10   any other ongoing court order in this matter.

11           e.    Agree that all court appearances, including his change
12   of plea hearing and sentencing hearing, may proceed by video-
13   teleconference ("VTC") or telephone, if VTC is not reasonably
14   available, so long as such appearances are authorized by Order of the
15   Chief Judge 20-097, 20-186, 21-031 or another order, rule, or
16   statute.  Defendant understands that, under the Constitution, the
17   United States Code, the Federal Rules of Criminal Procedure
18   (including Rules 11, 32, and 43), he may have the right to be
19   physically present at these hearings.  Defendant understands that
20   right and, after consulting with counsel, voluntarily agrees to waive
21   it and to proceed remotely.  Defense counsel also joins in this
22   consent, agreement, and waiver.  Specifically, this agreement
23   includes, but is not limited to, the following:

24           i.    Defendant consents under Section 15002(b) of the
25   CARES Act to proceed with his change of plea hearing by VTC or
26   telephone, if VTC is not reasonably available.

27           ii.   Defendant consents under 18 U.S.C. § 3148 and
28   Section 15002(b) of the CARES Act to proceed with any hearing

1   regarding alleged violations of the conditions of pre-trial release
2   by VTC or telephone, if VTC is not reasonably available.

3          f.    Not commit any crime; however, offenses that would be
4   excluded for sentencing purposes under United States Sentencing
5   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
6   within the scope of this agreement.

7          g.    Be truthful at all times with the United States
8   Probation and Pretrial Services Office and the Court.

9          h.    Pay the applicable special assessments at or before
10  the time of sentencing unless defendant has demonstrated a lack of
11  ability to pay such assessments.

12         i.    At or before the time of sentencing, satisfy any and
13  all restitution/fine obligations based on ability to pay by
14  delivering a certified check or money order to the Fiscal Clerk of
15  the Court in the amount of at least $60,706.73, to be held until the
16  date of sentencing and, thereafter, applied to satisfy defendant's
17  restitution/fine balance.  Payments may be made to the Clerk, United
18  States District Court, Fiscal Department, 255 East Temple Street,
19  11th Floor, Los Angeles, California 90012.

20         j.    Ability to pay shall be assessed based on the
21  Financial Disclosure Statement, referenced below, and all other
22  relevant information relating to ability to pay.

23         k.    Defendant agrees that any and all restitution/fine
24  obligations ordered by the Court will be due in full and immediately.
25  The government is not precluded from pursuing, in excess of any
26  payment schedule set by the Court, any and all available remedies by
27  which to satisfy defendant's payment of the full financial
28  obligation, including referral to the Treasury Offset Program.

1        l.    Complete the Financial Disclosure Statement on a form

2   provided by the USAO and, within 30 days of defendant's entry of a

3   guilty plea, deliver the signed and dated statement, along with all

4   of the documents requested therein, to the USAO by either email at

5   usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

6   Litigation Section at 300 N. Los Angeles St., Suite 7516, Los

7   Angeles, CA 90012.

8        m.    Authorize the USAO to obtain a credit report upon

9   returning a signed copy of this plea agreement.

10       n.    Consent to the USAO inspecting and copying all of

11  defendant's financial documents and financial information held by the

12  United States Probation and Pretrial Services Office.

13                      THE USAO'S OBLIGATIONS

14  3.    The USAO agrees to:

15       a.    Not contest facts agreed to in this agreement.

16       b.    Abide by all agreements regarding sentencing contained

17  in this agreement.

18       c.    At the time of sentencing, move to dismiss the

19  remaining counts of the indictment as against defendant.  Defendant

20  agrees, however, that at the time of sentencing the Court may

21  consider any dismissed charges in determining the applicable

22  Sentencing Guidelines range, the propriety and extent of any

23  departure from that range, and the sentence to be imposed.

24       d.    At the time of sentencing, provided that defendant

25  demonstrates an acceptance of responsibility for the offenses up to

26  and including the time of sentencing, recommend a two-level reduction

27  in the applicable Sentencing Guidelines offense level, pursuant to

28

1  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
2  additional one-level reduction if available under that section.
3      e.  With respect to Count Three, recommend that defendant
4  be sentenced to a term of imprisonment no higher than the low end of
5  the applicable Sentencing Guidelines range, provided that the offense
6  level used by the Court to determine that range is 16 or higher and
7  provided that the Court does not depart downward in offense level or
8  criminal history category.  For purposes of this agreement, the low
9  end of the Sentencing Guidelines range is that defined by the
10 Sentencing Table in U.S.S.G. Chapter 5, Part A.
11                    <u>NATURE OF THE OFFENSES</u>
12     4.  Defendant understands that for defendant to be guilty of
13 the crime charged in Count Three, that is, bank fraud, in violation
14 of Title 18, United States Code, Section 1344(2), the following must
15 be true:
16     a.  First, defendant knowingly carried out a scheme or
17 plan to obtain money or property from a financial institution by
18 making false statements or promises;
19     b.  Second, defendant knew that the statements or promises
20 were false;
21     c.  Third, the statements or promises were material, that
22 is, they had a natural tendency to influence, or were capable of
23 influencing, a financial institution to part with money or property;
24     d.  Fourth, defendant acted with the intent to defraud;
25 that is, the intent to deceive and cheat; and
26     e.  Fifth, the financial institution was federally
27 insured.
28

5

1    5.    Defendant understands that for defendant to be guilty of
2    the crime charged in Count Ten, that is, aggravated identity theft,
3    in violation of Title 18, United States Code, Section 1028A(a)(1),
4    the following must be true:
5         a.    First, defendant knowingly possessed without legal
6    authority a means of identification of another person;
7         b.    Second, defendant knew that the means of
8    identification belonged to a real person; and
9         c.    Third, defendant did so during and in relation to bank
10   fraud, as charged in Count Three of the indictment.
11   A "means of identification" is any name or number that may be
12   used, alone or in conjunction with any other information, to identify
13   a specific individual.
14                   <u>PENALTIES AND RESTITUTION</u>
15   6.    Defendant understands that the statutory maximum sentence
16   that the Court can impose for a violation of Title 18, United States
17   Code, Section 1344(2), is: thirty years' imprisonment; a five-year
18   period of supervised release; a fine of $1,000,000 or twice the gross
19   gain or gross loss resulting from the offense, whichever is greatest;
20   and a mandatory special assessment of $100.
21   7.    Defendant understands that the statutory maximum sentence
22   that the Court can impose for a violation of Title 18, United States
23   Code, Section 1028A(a)(1), is: two years' imprisonment; a one-year
24   period of supervised release; a fine of $250,000 or twice the gross
25   gain or gross loss resulting from the offense, whichever is greatest;
26   and a mandatory special assessment of $100.
27   8.    Defendant understands, therefore, that the total maximum
28   sentence for all offenses to which defendant is pleading guilty is:

thirty-two years' imprisonment; a five-year period of supervised release; a fine of $1,250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $200.[1]

9.    Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in Count Ten, is a two-year term of imprisonment, which must run consecutive to any other sentence of imprisonment, and a mandatory special assessment of $100.

10.    Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in

---

[1] Defendant understands that there is case law suggesting that the term of supervised release on Count Ten could be imposed to run consecutively to the terms of supervised release on the other counts. While the USAO does not intend to seek a consecutive term of supervised release, defendant understands that if the Court were to impose a consecutive term of supervised release, the maximum term of supervised release for all of the counts of conviction would be six years, rather than five years as stated in the text above.

1  U.S.S.G. § 1B1.3, in connection with those counts and charges.  The
2  parties currently believe that the applicable amount of restitution
3  is at least $60,706.73, but recognize and agree that this amount
4  could change based on facts that come to the attention of the parties
5  prior to sentencing.

6      11.  Defendant agrees that any and all fines and/or restitution
7  ordered by the Court will be due immediately.  The government is not
8  precluded from pursuing, in excess of any payment schedule set by the
9  Court, any and all available remedies by which to satisfy defendant's
10 payment of the full financial obligation, including referral to the
11 Treasury Offset Program.

12     12.  Defendant understands that supervised release is a period
13 of time following imprisonment during which defendant will be subject
14 to various restrictions and requirements.  Defendant understands that
15 if defendant violates one or more of the conditions of any supervised
16 release imposed, defendant may be returned to prison for all or part
17 of the term of supervised release authorized by statute for the
18 offense that resulted in the term of supervised release, which could
19 result in defendant serving a total term of imprisonment greater than
20 the statutory maximum stated above.

21     13.  Defendant understands that, by pleading guilty, defendant
22 may be giving up valuable government benefits and valuable civic
23 rights, such as the right to vote, the right to possess a firearm,
24 the right to hold office, and the right to serve on a jury.
25 Defendant understands that he is pleading guilty to a felony and that
26 it is a federal crime for a convicted felon to possess a firearm or
27 ammunition.  Defendant understands that the convictions in this case
28 may also subject defendant to various other collateral consequences,

1  including but not limited to revocation of probation, parole, or

2  supervised release in another case and suspension or revocation of a

3  professional license.  Defendant understands that unanticipated

4  collateral consequences will not serve as grounds to withdraw

5  defendant's guilty pleas.

6      14.   Defendant and his counsel have discussed the fact that, and

7  defendant understands that, if defendant is not a United States

8  citizen, the conviction in this case makes it practically inevitable

9  and a virtual certainty that defendant will be removed or deported

10  from the United States.  Defendant may also be denied United States

11  citizenship and admission to the United States in the future.

12  Defendant understands that while there may be arguments that

13  defendant can raise in immigration proceedings to avoid or delay

14  removal, removal is presumptively mandatory and a virtual certainty

15  in this case.  Defendant further understands that removal and

16  immigration consequences are the subject of a separate proceeding and

17  that no one, including his attorney or the Court, can predict to an

18  absolute certainty the effect of his conviction on his immigration

19  status.  Defendant nevertheless affirms that he wants to plead guilty

20  regardless of any immigration consequences that his plea may entail,

21  even if the consequence is automatic removal from the United States.

22  <u>FACTUAL BASIS</u>

23      15.   Defendant admits that defendant is, in fact, guilty of the

24  offenses to which defendant is agreeing to plead guilty.  Defendant

25  and the USAO agree to the statement of facts provided below and agree

26  that this statement of facts is sufficient to support pleas of guilty

27  to the charges described in this agreement and to establish the

28  Sentencing Guidelines factors set forth in paragraph 17 below but is

not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on a date unknown and continuing through on or about May 30, 2020, in Los Angeles and San Bernardino Counties, within the Central District of California, defendant and co-defendant Marina Haghnazarian, each aiding and abetting the other, knowingly and with intent to defraud, engaged in a fraudulent scheme to obtain monies, funds, credits, assets, and other property owned by and in the custody and control of Bank of America, N.A. ("Bank of America") and Wells Fargo Bank, N.A. ("Wells Fargo"), which are financial institutions insured by the Federal Deposit Insurance Corporation.

The fraudulent scheme operated as follows: defendant would steal checks, debit cards, and credit cards from mailboxes, including post office boxes inside of United States Post Office locations. Co-defendant Haghnazarian would then open bank accounts at financial institutions in the names of a victim business. In so doing, co-defendant Haghnazarian would falsely represent to the financial institutions that she had the victim businesses' authority to open the accounts and concealed from the financial institutions that she was not affiliated in any way with the victim businesses. Defendant then would deposit stolen checks into the fraudulent bank accounts that co-defendant Haghnazarian had opened. In doing so, defendant falsely represented to the financial institutions that he had authority to deposit the checks and concealed from the financial institutions that he did not have authority to possess and deposit the checks. Defendant and co-defendant Haghnazarian subsequently

1  would withdraw, transfer, and otherwise steal money from the

2  fraudulent accounts for their personal use.

3      Specifically, on November 22, 2019, co-defendant Haghnazarian

4  opened a bank account at Wells Fargo in the name of victim-business

5  M.D.B. ("fraudulent M.D.B. account") and listed herself as sole

6  proprietor of victim-business M.D.B.  Co-defendant Haghnazarian knew

7  that she did not have authority to open the account in the name of

8  victim-business M.D.B. and acted with the intent to defraud Wells

9  Fargo .  That same day, defendant deposited four stolen checks into

10 the fraudulent M.D.B. account, totaling approximately $56,201.33.

11 Defendant did not have authority to possess or use those stolen

12 checks.  Defendant subsequently withdrew the funds from the

13 fraudulent M.D.B. account by repeatedly using a debit card to

14 withdraw cash from the account and by writing checks from the account

15 and then depositing them into his personal account.  Co-defendant

16 Haghnazarian also withdrew money from the fraudulent M.D.B. account

17 by writing cashier's checks to herself from the account, writing

18 checks to other co-schemers, and writing checks from the account and

19 then depositing them into an account defendant controlled.  Defendant

20 and co-defendant Haghnazarian also transferred money from the

21 fraudulent M.D.B. account to accounts they controlled using the

22 "Zelle" online bank-to-bank transfer system.  In total, defendants'

23 fraudulent scheme caused Wells Fargo  actual losses of approximately

24 $48,167.79.

25      During and in connection with this fraudulent scheme, defendant

26 knowingly possessed and used means of identification belonging to

27 other persons, namely, the names and bank account numbers of victims

28 L.S., C.S., A.T., and L.R.  Defendant knew that this information

1    belonged to other real persons, and he possessed and used it without
2    lawful authority.
3        In addition to the M.D.B. fraudulent account, and in furtherance
4    of the fraudulent scheme, in April 2019, defendant opened a
5    fraudulent business bank account in the name of victim business
6    R.F.S. at Wells Fargo .  Defendant and other co-schemers deposited
7    stolen checks totaling $19,690.89 into this account and attempted to
8    withdraw money from the account, including by writing a check from
9    this account to co-defendant Haghnazarian.  Defendant, co-defendant
10   Haghnazarian, and other co-schemers subsequently withdrew at least
11   $9,821.82 from this account.  Additionally, in March 2020, co-
12   defendant Haghnazarian opened fraudulent bank accounts at Bank of
13   America in the names of victim-businesses M.L.R. and I.E., into which
14   defendant and co-conspirators then deposited stolen checks totaling
15   $32,019.94.
16       In addition, on March 20, 2020, defendant activated a Discover
17   Bank credit card that belonged to victim A.Y.  Defendant knew that
18   the credit card did not belong to him and instead belonged to a real
19   person and possessed and used it without lawful authority.  Defendant
20   used this credit card to rent a car from the Avis/Budget company and
21   to purchase other items.  In total, defendant caused an actual loss
22   amount of approximately $626.77 to Discover Bank and approximately
23   $2,090.35 to the Avis/Budget company.
24       In connection with this fraudulent scheme, defendant stole
25   mail from post offices throughout the Central District of California.
26   On February 8, 2020, defendant stole mail from the La Verne Post
27   Office located at 3355 White Avenue, La Verne, California 91750.
28   Defendant was arrested by an officer from the La Verne Police

Department, who searched the vehicle that defendant was driving.
Inside the vehicle, the officer found mail belonging to approximately
21 victims, including the following opened items:

- 7 checks;
- 6 debit/credit cards;
- 2 gift cards; and
- 2 pieces of mail matter with account information.

The total intended losses relating to the opened mail matter is
approximately $14,212.67. Additionally, pursuant to search warrants,
officers reviewed three phones that belonged to defendant. The
phones contained images of the following access devices belonging to
individual victims: approximately 154 profiles with personal
identifying information, including social security numbers and dates
of birth; approximately 69 credit/debit cards (including Capital One
Credit/Debit Cards ending in x5897, x8508, x6057, and x1935, where
victim Capital One incurred losses relating to fraudulent activity);
approximately 35 checks; and approximately 16 drivers
licenses/identification cards. The total intended loss relating to
these access devices is at least $106,000.

In connection with the bank fraud scheme, defendant possessed
stolen mail belonging to more than 10 victims. The overall scheme
had an intended loss (that is, the amount of pecuniary harm defendant
intended to inflict) of at least more than $150,000 and actual losses
of at least $60,706.73.

SENTENCING FACTORS

16. Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures

13

under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

17.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss of More Than $150,000: | At least +10 | U.S.S.G. § 2B1.1(b)(1)(F) |
| Offense Involved 10 or More Victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |

Defendant agrees that the actual loss that resulted from defendant's fraud and was reasonably foreseeable to defendant is at least $60,706.73.  Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above. Defendant understands that the Court must sentence defendant to a term of two years' imprisonment on Count Ten,

1 │ which must run consecutive to any term of imprisonment imposed for
2 │ Count Three.

3 │    18.   Defendant understands that there is no agreement as to
4 │ defendant's criminal history or criminal history category.

5 │    19.   Defendant and the USAO reserve the right to argue for a
6 │ sentence outside the sentencing range established by the Sentencing
7 │ Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
8 │ (a)(2), (a)(3), (a)(6), and (a)(7).

9 │                    WAIVER OF CONSTITUTIONAL RIGHTS

10 │    20.   Defendant understands that by pleading guilty, defendant
11 │ gives up the following rights:

12 │          a.   The right to persist in a plea of not guilty.

13 │          b.   The right to a speedy and public trial by jury.

14 │          c.   The right to be represented by counsel -- and if
15 │ necessary have the Court appoint counsel -- at trial.  Defendant
16 │ understands, however, that, defendant retains the right to be
17 │ represented by counsel -- and if necessary have the Court appoint
18 │ counsel -- at every other stage of the proceeding.

19 │          d.   The right to be presumed innocent and to have the
20 │ burden of proof placed on the government to prove defendant guilty
21 │ beyond a reasonable doubt.

22 │          e.   The right to confront and cross-examine witnesses
23 │ against defendant.

24 │          f.   The right to testify and to present evidence in
25 │ opposition to the charges, including the right to compel the
26 │ attendance of witnesses to testify.

27 │
28 │

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

21.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

22.    Defendant agrees that, provided the Court, before the imposition of the mandatory consecutive sentence of imprisonment on Count Ten, imposes a term of imprisonment within or below the range corresponding to an offense level of 19 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term

16

1  of probation or supervised release imposed by the Court, provided it
2  is within the statutory maximum; (f)  the amount and terms of any
3  restitution order, provided it requires payment of no more than
4  $60,706.73; and (g) any of the following conditions of probation or
5  supervised release imposed by the Court: the conditions set forth in
6  Second Amended General Order No. 20-04 of this Court; the drug
7  testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d);
8  and the alcohol and drug use conditions authorized by 18 U.S.C.
9  § 3563(b)(7).

10      23.   Defendant also gives up any right to bring a post-
11  conviction collateral attack on the conviction or sentence, except a
12  post-conviction collateral attack based on a claim of ineffective
13  assistance of counsel, a claim of newly discovered evidence, or an
14  explicitly retroactive change in the applicable Sentencing
15  Guidelines, sentencing statutes, or statutes of conviction.
16  Defendant understands that this waiver includes, but is not limited
17  to, arguments that the statute to which defendant is pleading guilty
18  is unconstitutional, and any and all claims that the statement of
19  facts provided herein is insufficient to support defendant's plea of
20  guilty.

21      24.   The USAO agrees that, provided (a) all portions of the
22  sentence are below the statutory maximum specified above and (b)
23  before imposition of the mandatory consecutive sentence of two years'
24  imprisonment on Count 10, the Court imposes a term of imprisonment
25  within or above the range corresponding to an offense level of 14 and
26  the criminal history category calculated by the Court, the USAO gives
27  up its right to appeal any portion of the sentence, with the
28

1  exception that the USAO reserves the right to appeal the amount of

2  restitution ordered if that amount is less than $60,706.73.

3  <u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

4      25.  Defendant agrees that if, after entering guilty pleas

5  pursuant to this agreement, defendant seeks to withdraw and succeeds

6  in withdrawing defendant's guilty pleas on any basis other than a

7  claim and finding that entry into this plea agreement was

8  involuntary, then (a) the USAO will be relieved of all of its

9  obligations under this agreement; and (b) should the USAO choose to

10  pursue any charge or any civil, administrative, or regulatory action

11  that was either dismissed or not filed as a result of this agreement,

12  then (i) any applicable statute of limitations will be tolled between

13  the date of defendant's signing of this agreement and the filing

14  commencing any such action; and (ii) defendant waives and gives up

15  all defenses based on the statute of limitations, any claim of pre-

16  indictment delay, or any speedy trial claim with respect to any such

17  action, except to the extent that such defenses existed as of the

18  date of defendant's signing this agreement.

19  <u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

20      26.  Defendant agrees that if any count of conviction is

21  vacated, reversed, or set aside, the USAO may: (a) ask the Court to

22  resentence defendant on any remaining count of conviction, with both

23  the USAO and defendant being released from any stipulations regarding

24  sentencing contained in this agreement, (b) ask the Court to void the

25  entire plea agreement and vacate defendant's guilty plea on any

26  remaining count of conviction, with both the USAO and defendant being

27  released from all their obligations under this agreement, or

28  (c) leave defendant's remaining conviction, sentence, and plea

18

agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

### EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

29.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

1          b.    Defendant waives and gives up all defenses based on

2    the statute of limitations, any claim of pre-indictment delay, or any

3    speedy trial claim with respect to any such action, except to the

4    extent that such defenses existed as of the date of defendant's

5    signing this agreement.

6          c.    Defendant agrees that: (i) any statements made by

7    defendant, under oath, at the guilty plea hearing (if such a hearing

8    occurred prior to the breach); (ii) the agreed to factual basis

9    statement in this agreement; and (iii) any evidence derived from such

10   statements, shall be admissible against defendant in any such action

11   against defendant, and defendant waives and gives up any claim under

12   the United States Constitution, any statute, Rule 410 of the Federal

13   Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

14   Procedure, or any other federal rule, that the statements or any

15   evidence derived from the statements should be suppressed or are

16   inadmissible.

17              COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

18                            OFFICE NOT PARTIES

19   30.   Defendant understands that the Court and the United States

20   Probation and Pretrial Services Office are not parties to this

21   agreement and need not accept any of the USAO's sentencing

22   recommendations or the parties' agreements to facts or sentencing

23   factors.

24   31.   Defendant understands that both defendant and the USAO are

25   free to: (a) supplement the facts by supplying relevant information

26   to the United States Probation and Pretrial Services Office and the

27   Court, (b) correct any and all factual misstatements relating to the

28   Court's Sentencing Guidelines calculations and determination of

sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 17 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

32.   Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty pleas, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be within
the statutory maximum.

NO ADDITIONAL AGREEMENTS

33.   Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the USAO
and defendant or defendant's attorney, and that no additional
promise, understanding, or agreement may be entered into unless in a
writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

34.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

_____          05/12/2021
ELIA HERRERA                             _____
ASHLEY FILLMORE                          Date
Assistant United States Attorneys

_____          5-12-21
ARNO ABRAMIAN                            _____
Defendant                                Date

_____          5-12-21
ANTHONY M. SOLIS                         _____
Attorney for Defendant Arno              Date
Abramian

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

*Arno Abramian by Grys w/ Auth*

ARNO ABRAMIAN
Defendant

5-12-21

Date

23

1

CERTIFICATION OF DEFENDANT'S ATTORNEY

2      I am Defendant Arno Abramian's attorney.  I have carefully and

3   thoroughly discussed every part of this agreement with my client.

4   Further, I have fully advised my client of his rights, of possible

5   pretrial motions that might be filed, of possible defenses that might

6   be asserted either prior to or at trial, of the sentencing factors

7   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8   provisions, and of the consequences of entering into this agreement.

9   To my knowledge: no promises, inducements, or representations of any

10  kind have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the factual basis set

14  forth in this agreement is sufficient to support my client's entry of

15  guilty pleas pursuant to this agreement.

16

17  ANTHONY M. SOLIS                    Date
    Attorney for Defendant Arno
18  Abramian

19

20

21

22

23

24

25

26

27

28

24